[No. 1558.]

REFUGIO GOMEZ *v.* THE STATE.

1. MURDER—EXPRESS MALICE—EVIDENCE.—While it is true that, in order
   to authorize a conviction for murder in the first degree, the existence of
   express malice at the time that the offense was perpetrated must be
   shown, still, express malice, like any other issue in the case, may be
   shown by circumstantial evidence. See the opinion *in extenso* on the
   question.
2. SAME—CHARGE OF THE COURT.—Where the evidence tends exclusively
   to establish murder of the first degree, there is no occasion for the court
   to charge the law of murder of the second degree.
3. FACT CASE.—Evidence held sufficient to sustain a conviction for murder
   of the first degree, with the death penalty assessed.

APPEAL from the District Court of Duval. Tried below before the Hon. J. C. Russell.

The indictment in this case charged the murder of Estefano Dios, *alias* Estefano Demas, on the twenty-sixth day of May, 1883, in Duval county, Texas. The indictment was joint against this defendant and one Refugio ———. The separate trial of the defendant resulted in his conviction of murder in the first degree, and his punishment was affixed at death.

Pablo Longoria was the first witness for the State. He testified, in substance, that he was a resident of Laredo, but was in the town of San Diego during the fiestas in the spring of 1883. He remembered that a man was killed in San Diego during the celebration. The man's name was Estefano Demas, and he was killed by a pistol shot fired by the defendant. In all, the defendant fired four shots at the deceased, and then, with a companion whose name was Refugio, ran off. The killing took place on a street leading from the plaza where the fiestas were being held.

The witness had seen the deceased, defendant and the man Refugio, during the previous part of the evening, gambling together at Pena's bar room, and just a few minutes before the shooting, he saw the three talking together at the edge of the plaza. The witness passed near them, going down the street, and noticed presently that they followed in the same direction,

a short space behind him, probably ten steps. The deceased was very drunk, and from the actions of the defendant the witness suspected something wrong. When the witness got near the end of the block he saw the defendant fire the first shot. He then stopped and saw the defendant fire three more shots, when the deceased fell. The defendant and Refugio then ran off.

While he was being fired upon, the deceased, who had no weapon, tried as best he could to defend himself with his hands. Witness at no time, either on the plaza or while they were going down the street, heard any quarreling between the three parties. There was no quarrel between them. The suspicions of the witness were aroused merely by the actions of the defendant, and the fact that the deceased was very drunk. The deceased was shot in the left breast, and died immediately. The shooting occurred in San Diego, Duval county, Texas.

On cross-examination, the witness testified, in substance, that he was looking back at the time and plainly saw the defendant fire the first shot. He then stopped, and as plainly saw him fire the other three. It was a clear starlight night, and it was perfectly easy to recognize persons, as he did the three parties to this tragedy, at ten steps. The whole plaza was lighted up, and when the witness first saw the three parties on the edge of the plaza they were standing in the light. The witness had then known the parties through the fiestas. He looked back from the time he saw them at the corner, because he suspected from the actions of defendant and the man Refugio that they intended something wrong. Here witness described the dress of each of the three parties.

The witness repeated that at no time in his hearing did the parties have a quarrel. They walked along the street together until they passed from the reflection of the lighted plaza, when the defendant shot the deceased. Refugio ran off first and defendant followed. The witness knew, and was positive, that the defendant was the man who did the shooting. Refugio did not shoot. Neither did the deceased, who was totally unarmed. Witness had no interest in this suit.

Deputy sheriff Edward Valls testified, for the State, that he was in San Diego at the fiestas in May, 1883, and remembered the killing of Estefano Dios or Demas. He was killed early in the night, on a street leading from the plaza. The witness was but a short distance from the place where the deceased fell,

when the last shot was fired. He hurried to the place and found a man lying on the ground. He then arrested a Mexican who was running off. At this time the witness Longoria came up and said that witness had arrested the wrong man—that the man who did the shooting was the man who sat at witness's left at the gambling table at Pena's that night, and that the man who was shot, whom witness had not yet recognized, was the man who sat upon his right. Thereupon the witness recognized the deceased as the man who in fact had sat at his right at Pena's. During the day, and the earlier part of the night, the witness had seen the defendant and the deceased together. The defendant and the deceased, who was very drunk, were at Pena's together an hour or two before the shooting. Witness was not at Pena's when defendant and deceased left. The deceased had no pistol about his person when the witness found him after he was shot. He had no other arms of any kind. A bunch of burglar keys were the only articles found on his person.

The motion for new trial attacked the sufficiency of the evidence, both as to the fact of the agency of the defendant in the commission of the offense, and to establish the essential element of express malice. The motion was overruled, and this appeal prosecuted.

*J. W. Moses*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE.  1.  Unquestionably in this case it devolved upon the State to prove, by competent evidence, to the satisfaction of the jury, beyond a reasonable doubt, that the homicide was committed by appellant with express malice; that is, with a sedate and deliberate mind and formed design on the part of appellant to kill the deceased, or to do him some serious bodily injury which might result in his death. But it is not required that express malice should be proved by direct evidence of its existence, or demonstrated with mathematical certainty. All that is required is that the evidence of its existence be such as might be reasonably sufficient to satisfy the minds of the jury that it did in fact exist. Such proof may be entirely circumstantial, and may be deduced from evidence " of the cool, calm and circumspect deportment and bearing of the party when the act is done, and immediately preceding and subsequent thereto;

his apparent freedom from passion or excitement; the absence of any obvious or known cause to disturb his mind or arouse his passions; the nature and character of the act done; the instrument used, as well as the manner in which the murder is committed." (*Farrar* v. *The State*, 42 Texas, 265; *Gaitan* v. *The State*, 11 Texas Ct. App., 544.)

In the case at bar we are of the opinion that the evidence to establish express malice was competent and amply sufficient. Appellant, without the least apparent cause, shot his victim four times with a pistol, and that victim was at the time unarmed and very drunk, and, as shown by the evidence, doing no act nor saying anything to provoke or in the least mitigate the wanton, cruel and deliberate act of appellant.

2. In our judgment there was no evidence in the case which required a charge from the court upon the law of murder in the second degree. As it appears in the record, the evidence leaves no room for any other reasonable conclusion than that the homicide was upon express malice, and was murder in the first degree.

We find no error in the proceedings and conviction, and the judgment is affirmed.

*Affirmed.*

Opinion delivered January 23. 1884.